# EXHIBIT F

LICENSING COVENANT
August 14, 2023

The following represents the agreed terms of a Licensing Covenant (the "Covenant") by and between **Stream TV Networks, Inc.**, ("Stream"), a Delaware corporation, Visual Semiconductor, Inc. ("VSI") a Wyoming corporation, jointly and severally the "VSI Parties") and **Rembrandt 3D Holding LTD**, a Nevis corporation ("Rembrandt"). Each of the VSI Parties and Rembrandt are referred to herein collective as the "Parties" and each as a "Party."

WHEREAS, Rembrandt and Stream entered into a Settlement Agreement and Mutual Release (the "Settlement") on May 23, 2021, resolving litigation between them and conferring certain intellectual property license rights to the Stream in consideration of cash payments and certain product purchase rights granted to Rembrandt;

WHEREAS, Rembrandt and Stream, have agreed on a Settlement Amendment dated August 12, 2023;

WHEREAS, As a shareholder of Stream, VSI has been making certain payments on behalf of Stream for more than a year;

WHEREAS, Stream has filed for bankruptcy in the Eastern District of Pennsylvania (Case No. 23-10763); and has filed a Disclosure Statement (Docket Entry 293) on July 13, 2023 that describes plan for VSI to provide funding to Stream;

WHEREAS, the VSI Parties understand that the current Settlement Agreement includes a non-exclusive license from Rembrandt to Stream, the VSI Parties want the plan for reorganization to have an optimal chance of success and to ensure that it is clear that the VSI Parties will have the sole right to commercialize the technology and products developed by Stream among the lenders, creditors, and shareholders of Stream;

WHEREAS, the VSI Parties would like to enter into a Licensing Covenant with Rembrandt to prevent certain lenders, creditors, and shareholders of Stream attempting to commercialize the technology and products developed by Stream;

WHEREAS, Rembrandt is willing to agree to a Licensing Restriction in exchange for Additional Payments and right to order Additional Products; and

WHEREAS, the VSI Parties represent and warrant that the Philips License to Stream's subsidiary is in good standing.

**NOW THEREFORE**, the Parties agree as follows:

SA20230814 - Page - 1         Stream _____ VSI _____ Rembrandt _____

## A. CONDITIONS PRECEDENT

1. This Licensing Covenant shall take effect immediately upon execution through September 1, 2023, but shall only become fully effective beyond September 1, 2023 when the VSI Parties provide the following:
   a. Proof of financing, including but not limited to corporate resolutions, proof of the escrow funds, or reasonable proof of funding described in the Disclosure Statement (Docket Entry 293) filed by Stream on July 13, 2023 subject to an agreement of non-disclosure and non-circumvention by Rembrandt (sensitive documents to be shared with Rembrandt on an attorneys eyes only basis);
   b. Payment of the first Additional Payment within the first to occur of: 1) 5 business days of funding of VSI, or 2) September 1, 2023;

## B. LICENSE RESTRICTIONS

1. Although the Parties acknowledge and agree that the license conferred to Stream by Rembrandt pursuant to the Settlement is non-exclusive, the Parties hereby confirm that Rembrandt shall NOT provide a license for its Rembrandt IP to certain competitors of Stream in exchange for the payments and terms and conditions herein.
2. Accordingly, Rembrandt hereby confirms that it shall not issue a license of any kind for its Rembrandt IP as defined in the Settlement to ANY of the following:
   a. SeeCubic, Inc. (a Delaware corporation) and any subsidiary or affiliate thereof, including but not limited to SeeCubic Limited (a private limited company formed in the United Kingdom) and SeeCubic India Pvt Ltd.
   b. Hawk Investment Holdings Limited and any subsidiary or affiliate thereof
   c. Shadron L. Stastney
   d. SLS Holdings VI, LLC or any other SLS Holdings company
   e. Arthur Leonard Robert Morton
   f. Alastair Crawford
   g. Any entity to which Shadron L. Stastney, Arthur Leonard Robert Morton, or Alastair Crawford are associated. Such association shall include any and all roles, including but not limited to corporate officer, board director, employee, consultant, advisor, investor, or customer.
   h. Any current or former subsidiary of Stream.

## C. ADDITIONAL PAYMENTS

1. The VSI Parties agree to pay Rembrandt a total payment of Three Million Six Hundred Thousand Dollars (USD $3,600,000.00) (the "Additional Payments") payable in one installment of One Million Five Hundred Thousand Dollars (USD $1,500,000) within seven (7) days of plan approval in the pending Stream bankruptcy and another twelve installments of One Hundred Seventy-Five Thousand Dollars (USD $175,000) each with the first payment to be made on September 1, 2023, the second payment to be made on September 15, 2023, and the remaining ten payments to be paid on the 15th of each month starting October 15, 2023.
2. Warrants equal to One and One-Half Percent (1.5%) of the outstanding equity in the entity taking control of the technology and business currently held by Stream after plan execution

SA20230814 - Page - 2                              Stream _____ VSI _____ Rembrandt _____

      post approval in the pending Stream bankruptcy wherein the exercise price and terms of the warrants are equal to the price paid for the shares in the entity immediately prior to or upon the execution of the plan.

3. The Payments are in addition to payments described in the Settlement and Settlement Amendment).
4. Once the Conditions Precedent are met, this Licensing Covenant shall take full effect and the VSI Parties shall receive the full value of the Licensing Covenant subject to all Payments under Section C(1), issuance of Warrants under C(2), and Additional Products under D(1) owed to Rembrandt upon the schedule provided herein. The VSI Parties are free to make any payment early and once all payments have been made, this Licensing Covenant becomes irrevocable.
5. If the VSI Parties fail to make any payment when due, Rembrandt shall be entitled to seek collection of any amounts owed, and the VSI Parties agree to a summary proceeding to obtain judgment in favor of Rembrandt and waive any right to contest the underlying value of this Licensing Covenant. Alternatively, Rembrandt can choose to be released from this Licensing Covenant with no obligation to return any prior payments, subject to a 30-day cure period effective upon notice to the VSI Parties (the "Cure Period"). If the covenant becomes forfeit after the Cure Period, the VSI Parties shall be liable for the missed payment owed during the Cure Period. If the VSI Parties make all 12 monthly payments but no bankruptcy plan has been approved, the covenant shall remain in full force and the VSI Parties shall have 30 days to exercise an option to make full payment of all amounts due and preserve the irrevocable covenant (the "Option Period"). The VSI Parties shall make a payment for the 30-day Option Period whether or not the option is exercised to preserve the restrictive covenant. If the option is exercised, the VSI Parties shall resume the payment schedule. If 1) the bankruptcy case is dismissed and all rights of appeal are exhausted; 2) the assets of Stream are sold; or 3) Stream exits bankruptcy voluntarily, the Option Period shall apply.
6. If VSI receives the Rembrandt license from Stream pursuant to the Settlement Amendment 1(D), VSI shall have the one-time right to assign, retaining no license for Stream/VSI, such acquired rights to a third-party at its sole discretion. Such assignment will accelerate all monetary and equity payments under the Settlement, Settlement Amendment, and this Licensing Covenant, but the production and equity obligations will remain the same as provided in Settlement, Settlement Amendment, and this Licensing Covenant.

D. **ADDITIONAL PRODUCTS**
1. The VSI Parties agree that Rembrandt may order an additional Nine Hundred Eighty-Five Thousand (985,000) 65" 8K 3DASD units at cost, subject to the same monthly limitations described in Section I(B) of the Settlement Amendment.
2. The Products are in addition to the products described in the Settlement and Settlement Amendment) and this increases the total number of "at-cost" units provided by Stream to Rembrandt to Four Million (4,000,000) total.
3. The Parties agree that if Stream is making standard products other than 65" 8K 3DASD, Rembrandt may substitute units for those other units proportionally to the costs of the respective units. For example, if a 65" 8K 3DASD unit has an at cost price of $1,000 and Stream is making a tablet with an at cost price of $200, Rembrandt may exchange 1 unit

SA20230814 - Page - 3      Stream _/s/_ VSI _/s/_ Rembrandt _/s/_

of a 65" 8K 3DASD for 5 units of tablets. However, such exchanges shall require at least three (3) months prior notice and may not exceed more than Fifteen Percent (15%) of the production capacity for the unit being exchanged.

The parties acknowledge their agreement to the terms of this Settlement Amendment by affixing their signatures below.

Accepted and agreed by Stream:

_____
Mathu Rajan
CEO
Stream TV Networks, Inc.

August 14, 2023

Accepted and agreed by Rembrandt:

_____
Stephen Blumenthal
President/CEO
Rembrandt 3D Holding LTD

August 14, 2023

Accepted and agreed by VSI:

_____
Visual Semiconductor, Inc.

Name: Joseph Corso
Title: Under Limited power of Attorney   Nov 30, 2022

August 14, 2023