**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Stream TV Networks, Inc., *et al*. | ) ) | Bankruptcy No. 23-10763 (DJB) |
| Debtors. | ) | |
| William A. Homony, in his Capacity as Chapter 11 Trustee of the Bankruptcy Estates of Stream TV Networks, Inc. and Technovative Media, Inc. | ) ) ) ) ) ) ) | Adv. No. 25-00138- (DJB) |
| Plaintiff | ) | |
| v. | ) | |
| Rembrandt 3D Holding Ltd., Visual Semiconductor, Inc., Mathu Rajan, **Raja Rajan,** and Brown and Michaels, P.C., Defendants. | ) ) ) ) ) ) | |

### DEFENDANT'S REPLY MEMORANDUM OF LAW IN REPLY OF OPPOSITION TO MOTION TO COMPEL DISCOVERY RELATING TO DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO BANKRUPTCY RULE 9011, FRCP 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT AUTHORITY

Raja Rajan replies to the Trustee's opposition [docket 6] to Defendant's Motion to Compel Discovery [docket 4] and in support thereof, provides the following:

### I.    REPLY TO FACTUAL AND PROCEDURAL HISTORY

Most of the procedural history recited by the Trustee is not in dispute. However, the characterization of the procedural history and the summary of factual history is materially inaccurate and misleading.

Defendant Raja Rajan served as Chief Operating Officer and a member of the Board of Directors of Debtor Stream TV Networks, Inc. ("**Stream**") until 2020. During that time, he worked alongside his brother, Mathu Rajan, Stream's CEO and Founder.  By 2020, Stream had ceased operations after its senior secured lenders—who had provided venture debt—took control

of the company's assets through a contested transfer. Rather than pursuing a court-ordered foreclosure, the lenders privately seized the assets. Ironically, this happened just as Stream had finally secured a sales contract with Bosch Automotive and was on the verge of supplying product samples to Google.

Notably, in 2022, the Delaware Supreme Court ruled[1] that the parties behind the asset transfer had acted improperly. Under Delaware corporate law and Stream's charter, selling all of a company's assets required both a court-approved foreclosure and shareholder consent—neither of which occurred. The Court effectively concluded that the self-help foreclosure was illegal.

As a result of the developments in 2020, Defendant Raja Rajan resigned from his role at Stream in 2020 and moved on to pursue a new professional path. Since that time, he has not been involved in Stream's business or its bankruptcy proceedings.

All post-2020 bankruptcy-related matters—including the current Chapter 11 case, have involved only Mathu Rajan, who has sought to recover assets he believes were wrongfully taken. Mathu Rajan is the one who pursued Stream's appeal to the Delaware Supreme Court. Defendant Raja Rajan has had no role in those efforts and is improperly implicated in proceedings by the Trustee with which he has no connection.

The Chapter 11 Trustee William A. Homony justifies his claim against Defendant Raja Rajan solely because he was a signatory to a settlement agreement promoted and executed by his brother, Mathu Rajan, through his new company, Visual Semiconductor, Inc. ("**VSI**"), with a third party, Rembrandt 3D Holdings Ltd. ("**Rembrandt**"). But as argued below, Defendant Raja Rajan thinks he was sued by the Trustee for improper purposes.

---

[1] *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323 (2022) The appellate decision was resounding and reported widely. (news article by Law360 on Supreme Court is entitled "Del. Justices Reverse Stockholder Snub in 3D-TV Co. Row" Link: Del. Justices Reverse Stockholder Snub In 3D-TV Co. Row - Law360).

Rembrandt is currently pursuing an adversary proceeding against the Trustee, asserting that the Trustee unlawfully approved a sale under 11 U.S.C. § 363 involving technology that included Rembrandt's proprietary intellectual property, without Rembrandt's consent. In essence, Rembrandt alleges that the Trustee sold property he had no legal right to sell.

The purchaser in that § 363 sale was Shadron Stastney[2] ("**Stastney**"), the same individual who previously took control of Stream's assets in 2020—an act the Delaware Supreme Court found to be improper, ruling that the transfer should have been fully adjudicated through a judicial foreclosure and with required shareholder approval. Notably, Stastney was later held in contempt[3] of court following the remand from the Delaware Supreme Court.

Thus, the Trustee has now effectively resold Stream's assets to the very party previously found to have wrongfully seized them and did so through a § 363 credit bid—allowing Stastney to bid alleged secured debt of his and other secured creditors that sided with him without contributing new cash[4] to the estate, thereby offering no tangible benefit to creditors beyond covering administrative expenses.

Defendant Raja Rajan played no role in orchestrating or executing this sale. His only connection is as a signatory to a settlement agreement after his employment with Stream, and his inclusion in this dispute is therefore unwarranted.

---

[2] Stastney was the leader of the group of people that took the assets away from Stream and also led the secured creditor entities to purchase its assets in the section 363 sale since the Supreme court ruling mandated, in essence, that Stream owned its own assets until completion of a proper foreclosure action by the creditors.

[3] "Rather than complying with the Transfer Obligation and the Post-Remand Injunction, SeeCubic, Hawk, and Stastney acted in concert to **evade those obligations**. " In re Stream TV Networks, Inc. Omnibus Agreement Litig., 283 A.3d 1183, 1192 (Del. Ch. 2022)… " **SeeCubic, Hawk, And Stastney Are In Contempt.**" In re Stream TV Networks, Inc. Omnibus Agreement Litig., 283 A.3d 1183, 1191 (Del. Ch. 2022) . In re Stream TV Networks, Inc. Omnibus Agreement Litig., 283 A.3d 1183, 1186-87 (Del. Ch. 2022)

[4] The section 363 sale purchase provide a little cash that will be consumed by the administrative expenses by the Trustee with little money left over.

That is narrow focus of the requested discovery is to find out if the Trustee had good-faith basis to sue Defendant Raja Rajan. Did the Trustee investigate any of the aforementioned before he sued Defendant Raja Rajan in a new adversary action. As argued, that is "doing his job" even on a minimal level.

## II.    REPLY ARGUMENT

Defendant Raja Rajan has filed a motion for sanctions against the Chapter 11 Trustee [Adversary Docket 7], asserting that the adversary proceeding filed against him was brought in bad faith and without a good-faith legal or factual basis. The motion seeks dismissal of Defendant Raja Rajan from the adversary proceedings, and sanctions against both the Trustee and his special counsel, Steven M. Coren, Esquire, who signed and filed the complaint. That Motion was served on the Trustee May 2nd 2025, so he had ample time (over 21 days) to voluntarily dismiss Defendant Raja Rajan voluntarily without Court intervention.

The limited preliminary discovery sought by Defendant Raja Rajan is directly related to the issue of the Trustee's good faith (or lack thereof) in naming him as a Defendant. This discovery is narrowly tailored to assess whether the Trustee conducted even a basic factual investigation before alleging claims against Defendant Raja Rajan. The purpose of the requested discovery is to assist the Court in determining whether sanctions are warranted based on the improper initiation of this adversary proceeding.

Had the Trustee fulfilled his duties and conducted a minimal, good faith inquiry, Defendant Raja Rajan would never have been named as a defendant in this lawsuit, nor had unfounded allegations made against him in the Adversary Complaint-a public federal court filing. As a result of these baseless allegations, Defendant Raja Rajan has already experienced reputational harm, including inquiries from clients who have become aware of the claims made against him

by a federal officer acting under color of official authority. Who would work with Raja Rajan with allegations made against by a federal officer?

Attorney Steven M. Coren contends that Defendant Raja Rajan was properly named in the adversary complaint because he executed a settlement agreement advocated by his brother, Mathu Rajan—even though it was executed years after Defendant Raja Rajan had left his former employer Stream, now the Debtor. Attorney Coren further argues that Defendant Raja Rajan's expression of concern in a separate litigation—where he opined that Shadron Stastney's motivations for initiating a settlement term sheet appeared intended to force Stream into bankruptcy. (Trustee's brief, page 2). That is the theory that caused the Trustee to allege collusion between the Rajan brothers in the Complaint.

These arguments are not only factually unsupported, but legally insufficient to justify naming Defendant Raja Rajan as a Defendant. A basic factual investigation would have revealed that:

a)  Defendant Raja Rajan was not involved in Stream's operations or transactions after 2020, when he resigned and moved on to a separate professional career.

b)  Defendant Raja Rajan's email, cited by the Trustee, was a personal opinion about Stastney's motives, which subsequent events have only validated. Stastney[5], after all, took control of Stream's assets in a manner later determined by the Delaware Supreme Court to be improper.

Moreover, the Trustee failed to conduct even the most minimal diligence before filing suits such as speaking with the engineers familiar with the relevant technology. Those engineers' conversations with Mathu Rajan, who was still engaged with the legacy of Stream's technology,

---

[5] See footnote 2 above.

formed the factual foundation for entering into a settlement agreement with Rembrandt—a party alleging ownership interest in some of the disputed technology.

Defendant Raja Rajan's role in executing the agreement was limited and perfunctory. He signed the agreement only because it included a personal release of claims in his favor. At that point, Stream—the entity that could have provided him with legal defense—was no longer a viable support mechanism, leaving him no alternative but to accept a release that would protect him from ongoing litigation exposure. To suggest that this act alone justifies inclusion in a federal adversary proceeding is untenable and supports Defendant Raja Rajan's motion for sanctions.

The case law cited in the primary Motion of Raja Rajan shows the actions of the Court are within its power and authority. Defendant Raja Rajan is simply asking the Court to enforce basic professionalism by a federal employee like the Trustee who is represented by numerous lawyers.

## III.   CONCLUSION

For the aforementioned reasons, Defendant Raja Rajan asks this honorable Court to approve his proposed order and grant the requested relief.

**Dated:** May 26, 2025

Respectfully submitted,

Raja Rajan, Esquire
*Pro Se Defendant in Adversary Proceeding and an unsecured creditor*

**CERTIFICATE OF SERVICE**

I Raja Rajan, certify that the undersigned will served be aforementioned by Court's electronic system.

Steven M. Coren, Esquire
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 735-8700
scoren@kcr-law.com
Special Counsel to the Trustee

\_\_\_\_/s/_____       **May 26, 2025**
Raja Rajan