# EXHIBIT 4

# Andrew Belli

| | |
|---|---|
| **From:** | Shaw, Kevin |
| **Sent:** | Wednesday, November 1, 2023 11:38 PM |
| **To:** | Callahan, Kevin P. (USTP); Schanne, John (USTP); james.gannone@usdoj.gov |
| **Cc:** | Zahralddin, Rafael; Fisher, Bennett; 'Nicole Maneen'; amanda@streamacquisitiongroup.com; 'mathu rajan'; Czerkawski, Andrew |
| **Subject:** | Stream (Bk. No. 23-10763/23-10764) - 2004 Document Request Responses |
| **Attachments:** | Stream - Initial 2004 Responses.pdf |

Kevin, John, and James,

Please see the attached response to your inquiries regarding Rule 2004 and the Debtors. We are working on providing a dropbox folder that will provide access to the *voluminous* documents attendant to – and in support of – the attached response. We can begin rolling out the documents this evening, if necessary. Otherwise, we intend to begin a seriatim approach to sending the documents we believe are responsive to the United States Trustee's comments and questions. This should commence tomorrow morning and will be completed in the next few days, if it is not done by the end of the day tomorrow.

Best regards,

Kevin Shaw

**Kevin F. Shaw**
**Attorney**
Wilmington
302.295.9436 or x3029436

1

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,[1]<br><br>　　　Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (MDC) |
| In re:<br><br>Technovative Media, Inc.,<br><br>　　　Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (MDC)<br><br>(Jointly Administered) |

**RESPONSE TO THE UNITED STATES TRUSTEE'S REQUEST FOR THE
PRODUCTION OF DOCUMENTS BY THE DEBTOR PURSUANT TO
<u>FED. R. BANKR. P. 2004 AND LOCAL RULE 2004-1</u>**

The topics to be covered during the Rule 2004 examination will include the following:

1. **How the financial obligations of Stream TV Networks, Inc. ("Stream"), and Technovative Media, Inc. (Technovative," and collectively with Stream, the "Debtors") have been paid during the bankruptcy proceeding, when they have been paid, at whose direction they have been paid, and by whom the payments have been made**.

No amounts have been paid on behalf of Technovative other than payments to the claims and noticing agent retained by the Debtors, BM Group, and for United States Trustee fees. The process for approval of the payments is for each of the Debtors is the same.

Requests for reimbursement of expenses by independent contractors and invoices were forwarded to Amanda Gonzalez at Visual Semiconductors, Inc. ("VSI"), who works as a project manager and was an independent contractor for VSI prior to August 2023. She updates the books

---

[1] The Debtors, together with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (…4092) and Technovative Media, Inc. (…5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

and records, and then forwards the requests to be independently reviewed and authorized by the CEO of VSI, Mathu Rajan.

Payments are reviewed by the Debtors' counsel as part of the review in order to comply with the Debtors' disclosure requirements under the United States Bankruptcy Code.

These payments are then tracked on behalf of the Debtor from the bank statements as described in the response to inquiry #10 by Suby Joseph. Book keeping is updated and maintained by both Mrs. Jeeva Rajan and Amanda Gonzalez. Suby Joseph also maintains a detailed reconciliation for VSI via excel spreadsheet of any setoffs and payments by VSI. These setoffs and payments are related to various subscription agreements detailed in the below response to inquiries #2, 5, and 12. Due to difficulties experienced with the designation of the Debtors' accounts as DIP accounts, VSI has setoff amounts it owes under subscription agreements to help preserve the going concern value of the Debtors' business. Dan Rink, who serves as in-house counsel to VSI and is a member of the independent committee of the board of VSI also reviews the expenses before they are set-off against the amounts owed under the subscription agreements and certifies the reconciliation reports created and maintained by Mr. Joseph.

Mrs. Rajan and/or Mrs. Gonzalez are responsible for authorizing all the payments from the bank accounts to vendors or independent contractors, once approved by the CEO. After August 2023, payments have been authorized to be paid directly out of Stream's account by the same personnel and process, but going forward the independent contractors will work for Stream in regard to direct payments made by Stream.

Bank statements applicable to the time period in response to this inquiry are attached in support. *See* **Exhibit A**.

2

2. **Any agreements to pay prepetition or post-petition claims (as per the term "claim" is defined in the Bankruptcy Code) asserted against the Debtors and any agreement to guarantee the payment of such claims.**

There are no agreements to pay any prepetition claims, but there have been inquiries by unsecured creditors, especially following the filing of the plan and disclosure statement. Any other settlement has been disclosed through the plan, disclosure statement, and restructuring support agreement, which are contingent on confirmation of the plan. There are also no guarantees for any prepetition claims from any parties.

VSI has committed to fund administrative claims through the plan. There is no other guarantee from VSI or any other party.

BOE has offered supply chain financing for the assistance of fulfillment of purchase orders directly to Stream, and such financing will be presented to the Court for approval.

VSI is separately entering into an agreement with EVolt Capital to assist in supply chain financing to help with the open purchase orders described in the response to inquiries #5 and #12. Subscription agreements entered into between VSI or any other investors are not restricted or dedicated to any expenditure. They are unrestricted in that regard.

Attached as **Exhibit B** are documents related to the supply chain financing. The subscription agreements (the "Subscription Agreements") are attached in response to inquiries #3, #5, and #12.

3. **Information regarding the issuance of shares from Stream and/or Techno to VSI.**

No stock has been sold in Technovative at this time.

There are three prepetition subscription agreements which have been fully funded prepetition and which fully paid claims prior to the filing of the bankruptcy for Stream. Two

3

subscription agreements between VSI and Stream TV are dated February 27, 2023 and one dated March 10, 2023:

- o  February 27, 2023 was for $1,427,355;
- o  February 27, 2023 was for $1,525,275;
- o  March 10, 2023 was for $750,000

There is a subscription agreement dated July 10, 2023 in the amount of $2 million. VSI has set-off $1,414,315.99 against funds owed to Stream under this subscription agreement.[2] On August 3, 2023, VSI made one (1) payment of $2,000[3] into Stream's debtor-in-possession account ("DIP Account") at Bank of America (account ending 2950) which was used to pay United States Trustee fees for both Debtor entities.

VS1 made five payments into the DIP Account (2950 account) during September totaling $219,000. See **Exhibit C** (Bank of America DIP Account 2950 Statement for September).

VSI has a remaining obligation to Stream in the amount of $468,540.03 from the July 10, 2023 subscription agreement. VSI sometimes makes direct payments because there are delays in payments for vendors overseas which their direct payment and exercise of their setoff right helps to shorten. The setoff is always consensual by the Debtors and subject to reconciliation and has been the practice between the companies since VSI was created in August 15, 2022. Also, the Debtors have had issues with Bank of America designating the account a DIP account which was not resolved until delivery of the August statement which was received in September 2023. See **Exhibit D** (comparing July and August bank statements).

---

[2] To the extent that there is an expense which has not yet been reconciled due to a vendor not providing appropriate back-up to support a set-off, the Debtors have not included those amounts in the Reconciliation. To the extent such amounts exist, they are relatively *de minimis*. Such amounts are and will be updated as they are received and reconciled.

[3] $2,000 was transferred over to the DIP Account, which had little to no cash in it at the time, and two cashiers checks were prepared for the Debtors to pay the United States Trustee fees for the Debtors.

The Bank of America account was inexplicably closed by the bank in October and a new DIP account has been opened at M&T Bank to replace a DIP account at KeyBank which was under a 90 day review process.  *See* **Exhibit E** for Bank Statements relevant to that time period.  *See* Subscription Agreements in chronological order attached here to as **Exhibit F** (including the unfunded subscription agreements).

4. **Any agreements, discussions, and understandings of the Debtors to designate VSI as an exclusive distributor that will accept orders from and make delivery to third- party customers.**

VSI and Stream entered into an exclusive  distribution agreement in the ordinary course on March 31, 2023 in order to meet the purchase order that was delivered from Cystar to VSI in March 20, 2023 and to help meet capacity for the Southern Telecom orders that were in discussion at that time.

Southern Telecom's orders were sent on April 10, 2023 into VSI.  As the Debtors' assets have not been returned, VSI has been assisting in providing necessary infrastructure to then build up the Debtors' finances and stability and to sustain going concern value.

Stream was involved in the negotiations with Cystar and Southern Telecom as Stream's technology is being used to fulfill and  pursue orders.  See **Exhibit G** (Distribution agreement, purchase orders for VSI to Stream),  and customer orders (Cystar to VSI and Southern Telecom to VSI).

5. **Any agreement, discussion, and understanding by the Debtors with VSI to fund the Debtors' operations and pay the Debtors' expenses since March 15, 2023.**

There are no agreements for VSI to fund Debtors' expenses post-petition other than the commitments in the filed Plan, Disclosure Statement, and Restructuring Support Agreement.  *See* **Exhibit F**, *supra*. and Docket Nos.  293 (*Disclosure Statement for Joint Plan of Reorganization*

5

*of Stream TV Networks, Inc. and Technovative Media, Inc. Pursuant to Chapter 11 of the Bankruptcy Code*), 293-1 (*Joint Plan of Reorganization of Stream TV Networks, LLC and Technovative Media, Inc. Pursuant to Chapter 11 of the Bankruptcy Code*), and 293-2 (*Chapter 11 Restructuring Support Agreement*).

There are also three unfunded subscription agreements which are being entered in the ordinary course. These unfunded subscription agreements are with IQH3D, B-Back Inc., and Sunny Hill Technology Ltd. See **Exhibit F**, *supra*.

6. **Any agreement, discussion and understanding by the debtors with VSI to fund the Debtors' subsidiaries including but not limited to SeeCubic B.V in the Netherlands since March 15, 2023.**

The Debtors attempted to propose a funding arrangement for SeeCubic B.V. ("SCBV") which was denied by the Court. See Docket Nos. 156 (*Debtor's Motion Pursuant to 11 U.S.C. § 105 and 364 for Entry of Interim and Final Orders: (1) Authorizing the Debtors to Obtain Post-Petition and Final Orders: (1) Authorizing the Debtors to Obtain Post-Petition Unsecured Financing to Fund Debtors' Foreign Subsidiaries; (2) Modifying the Automatic Stay; and (3) Setting Final Hearing*) and 231 (*Order Denying Debtors' Motion Pursuant to 11 U.S.C. § 105 and 364 for Entry of Interim and Final Orders: (1) Authorizing the Debtors to Obtain Post-Petition and Final Orders: (1) Authorizing the Debtors to Obtain Post-Petition Unsecured Financing to Fund Debtors' Foreign Subsidiaries; (2) Modifying the Automatic Stay; and (3) Setting Final Hearing*).

Pursuant to the litigation on the funding arrangement for the foreign proceedings, the Court instructed Mr. Rajan, as an officer of the non-debtor subsidiaries, to find funding. Mr. Rajan has been unable to negotiate any resolution that would be acceptable to the Debtors' interests.

6

Negotiations between Stream and SCBV through the independent director and directly with SCBV stopped because SCBV's and SeeCubic of Delaware's actions included misappropriation of trade secrets which violated U.S. Federal law.

Stream discussed funding with VSI but VSI was unwilling to continue to fund an inappropriate budget in the foreign subsidiary and to fund any entity which refused to assist in the fulfillment of customer purchase orders. *See* **Exhibit H** (communications with the independent director).

7. **Payments made by VSI or any person or entity on behalf of the Debtors to the Debtors' officers, directors and employees.**

As noted herein, payments are processed at the direction of Mathu Rajan, CEO of Stream after August 2023 and prior to that time processed through VSI. Payments are then tracked on behalf of the Debtors from the bank statements of VSI or Stream as applicable and as described in the responses to inquiries 1 and 3, above.

The only full time employee, officer, or director for Stream or Technovative prior to August is Mathu Rajan. VSI has made salary payments and travel expenses on behalf of Mr. Rajan post-petition. *See* **Exhibit I** (Bank Statements and Excel Spreadsheet used for reconciliation). After August, Stream has paid Mr. Rajan directly.

Mr. Parks, the Debtors prospective Chief Financial Officer, has not been retained yet, so no payments have been made to him by any party. Mr. Parks was represented by Dutch counsel in the Netherlands during litigation over who would be made independent director of SeeCubic B.V., which was paid by VSI but the Debtors are not a party to that action.

Independent contractors are paid twice a month on the 7th and the 22nd of the month. Until September 22, 2023, independent contractors were paid directly by VSI. The September 22 and October 7 independent contractor payments were made by Stream TV out of the Bank of America

7

DIP Account (the account ending in 2950). *See* **Exhibit J** (Bank Statements highlighted and payments to independent contractors). Bank of America refused to designate the account a DIP account until August and the Debtors were not informed of the situation until September when the reviewed the August statement. *See* **Exhibit K** (Excerpts from highlighted Bank Statements).

Once Bank of America designated the account a DIP account, there were 3-4 days delays in payments and wires.

In response to these delays, the Debtors opened a DIP account at KeyBank but there was a 30 day period in which there were restrictions on the account which rendered it virtually useless during that time period. Wires could only be done in person and there were no outgoing wires for 30 days and all transactions had to be approved their legal department. *See* **Exhibit L** (Email from KeyBank).

The Debtors then opened an account at M&T Bank in late October which was designated as a DIP account and which they will use going forward.

8. **Payments made by VSI or any person or entity on behalf of the Debtors to the Debtors' affiliates.**

No payments of which the Debtors are aware have been made to subsidiaries or affiliates by VSI other than what is detailed in responses including but not limited to inquiry #6.

The Debtors have answered this inquiry by reference to United States Bankruptcy Code section 101(2) (which discusses what constitutes an affiliate/subsidiary). *See* **Exhibit M** (List of Affiliates and Subsidiaries).

9. **Payments made by VSI or any person or entity to any third parties on behalf of the Debtors or their subsidiaries.**

No payments of which the Debtors are aware have been made to subsidiaries or affiliates by VSI other than what is detailed in responses including but not limited to inquiry #6. The

8

Debtors have answered this inquiry by reference to United States Bankruptcy Code section 101(2) (which discusses what constitutes an affiliate/subsidiary).  See **Exhibit M** (List of Affiliates and Subsidiaries).

**10.    How the Debtors tracked, identified, monitored, and booked for accounting purposes the payments made by VSI or any person or entity on behalf of the Debtors to (i) the Debtors' officers, directors and employees, (ii) the Debtors' affiliates, and (iii) any third parties.**

The Debtors' books and records are maintained in QuickBooks in a Stream TV designated account by an independent contractor, and former Stream TV employee, Amanda Gonzalez.  Suby Joseph and Jeeva Rajan also have access to the accounting system.  Mr. Joseph only has view access, but Mrs. Gonzalez and Mrs. Rajan can edit.

Mrs. Gonzales receives a reimbursement request form (known as a disbursement request form) or there is an invoice for goods or services presented for payment.  The only exception is for the bi-monthly payments to former Stream employees displaced by the vacated Chancery Court injunction who are now engaged as independent contractors : Amanda Gonzalez, Bud Robertson, Dan Rink, Mathu Rajan, Matt Lo, Nicole Maneen, Raja Rajan, Sarah Brewer, and Suby Joseph. Mrs. Rajan and Mr. Rajan Rajan receive payments for book keeping/pay agent services and engineering consulting, respectively, through a vendor called Innoventures, LLC.

Dan Rink resigned from Stream  to assist and join in the independent committee of the VSI Board of Directors on or about July 1, 2023 and to serve as in-house counsel to VSI.  He did not receive any payments from Stream or VSI on behalf of Stream after that point.  The payments are logged into the Stream account in QuickBooks by Ms. Gonzalez and Mrs. Rajan.  On the VSI account the same two people create the VSI entries.

A separate report is prepared by Suby Joseph from the bank statements at VSI and Stream in order to reconcile the payments between the two entities. Ms. Gonzalez and Mr. Joseph work with the Debtors' counsel and paralegals to prepare the MORs from this data, the bank statements, QuickBooks, and reconciliation report. Mr. Rink reviews the reports as well, to ensure their accuracy.

Prior to August, the reconciliation report was done quarterly by VSI. VSI and the Debtors began doing the reconciliation on a monthly basis beginning in August. See **Exhibit N** (Reconciliation Reports).

11. **Communications between the Debtors and VSI involving payments made on Debtors' behalf by VSI to third parties.**

Please see the attached emails requesting payment and disbursement forms. See **Exhibit O** (Payment and Disbursement Form Requests).

12. **Purchase orders referenced in pleadings filed by Debtors and/or in the Debtors' Disclosure Statements.**

These include but are not limited to those purchase orders identified by the Debtors as made by Google, Inuma Gauge Mfg. Co., Cystar International Limited, IQH3D, B-Back Inc., Sunny Hill Technology Ltd, and Bosch. See **Exhibit F** (All purchase orders in all forms, including emails).

13. **How the information, was obtained to put in the monthly operating reports that were filed with the bankruptcy Court throughout the entire proceeding to date, including, without limitation, which books and records were reviewed in preparing the monthly reports.**

All the information is extracted from the bank statements and prepared on a cash basis. These are bank accounts and prepaid card accounts operated by Visual Semiconductor, Inc; City Wall Capital, Inc. ("CWC") and Stream. All the companies are under the direction of Mathu Rajan.

Each transaction in the account statement is categorized into Cost Center, Payment Category and Party – which allows for a quick summary of payments that were processed. This summary is then provided as a statement to Stream TV which then uses it for the monthly operating reports ("MOR").

The process as to how expenses are recorded and how any setoff is reconciled in the Stream books and records in QuickBooks is described in the response to inquiry #10.  As noted, the reconciliation prepared by VSI for Stream, is included in the response to inquiry #10 and will be done on a monthly basis starting with the September MOR.  CWC had a bank account with Chase with a debit card drawn against the account.  Prior to October, VSI was making payments for CWC.  *See* **Exhibit N**.  CWC is an entity that was set up to pay for travel expenses incurred in the process of Stream's capital raising and regular business activities.

CWC will – going forward – only pay for VSI travel.  Stream travel will be paid through Stream.

**14.     Responsibilities of each officer, director and employee of the Debtors.**

Mr. Rajan was the sole officer, director, and employee of the Debtors before August.  He serves as the CEO.  An application to employ Mr. Parks as CFO has been filed at Docket Nos. 234 and 298.

The former employees displaced by the vacated Chancery Court Order which transferred the assets of the Debtors to SeeCubic, Inc. are discussed in the *Debtors' Motion for Entry of Interim and Final Orders Authorizing Debtors to Pay (I) Prepetition Employee Obligations, (II) Prepetition Withholding Obligations, and (III) Post-Petition Employee Obligations in the Ordinary Course* [D.I. 134] (the "Employee Motion") and were 1099 contractors at VSI until approximately September, 2023 and are now going to be 1099 contractors engaged directly by

Stream TV and are listed on **Exhibit P**.  The Employee Motion  was filed to bring several employees into Stream much earlier, but that motion was placed into "abeyance" by the Clerk's office or the Court's Deputy Clerk and the Court only recently gave the Debtors' a hearing date of November 15, 2023.

Those parties are listed on **Exhibit P**.  There are also parties who are being considered for operational  positions with the Debtors and are listed on **Exhibit Q**.

**15.    Relationship of VSI to each of the Debtors, and the Debtors' directors, officers, and employees.**

Mr. Mathu Rajan is CEO and a Director of both VSI and Stream TV and holds 19.27 million shares of Stream.

Various former Stream employees that have been working for VSI could come over to Stream. The Debtors are seeking authority to hire them as employees through the Employee Motion but they could remain as 1099 contractors under the Debtors' business judgment.  As previously discussed, these are employees that Mr. Rajan kept together for the purpose of production and manufacturing as well distribution and sales and marketing.  This is a highly technical field and one  which requires a wide and specialized supply chain, which is not easily replicated.  *See* **Exhibit R** (stockholders and option holders).

VSI and Technovative have no relationship other than the fact that Mr. Rajan is an officer, director and shareholder of VSI and is the only officer and director of Technovative.

12